FILED
Oct 03, 2018
09:42 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| ROBERT JERNIGAN, | ) | Docket No. 2017-05-1138 |
| Employee, | ) | |
| v. | ) | |
| | ) | |
| BAILEY CO., INC., | ) | State File No. 41017-2016 |
| Employer, | ) | |
| and | ) | |
| | ) | |
| ZURICH AMERICAN INSURANCE | ) | Judge Dale Tipps |
| CO., | ) | |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the Court on September 26, 2018, for an Expedited Hearing. The present focus of this case is whether Mr. Jernigan is entitled to additional medical treatment: the spinal surgery recommended by Dr. Michael Moran. The central legal issue is whether Mr. Jernigan is likely to establish at a hearing on the merits that his current condition and the need for this surgery arose primarily out of and in the course and scope of his employment. For the reasons below, the Court holds Mr. Jernigan failed to meet this burden and is not entitled to benefits at this time.

## History of Claim

Mr. Jernigan injured his low back on April 28, 2016, while making a delivery for The Bailey Company. Bailey accepted the injury as compensable and provided medical treatment. That treatment began with Physicians Medical Care, where an advanced practice nurse assessed a low back strain and referred Mr. Jernigan to an orthopedic specialist.

Bailey provided an orthopedic panel, and Mr. Jernigan selected Dr. William Ledbetter. He gave Dr. Ledbetter a history of his low-back pain and reported, "Intermittent pain into the buttock and thigh bilaterally. No true radicular pain, i.e., pain

1

past the knee." Dr. Ledbetter ordered an MRI.

At a follow-up visit, Dr. Ledbetter noted, "Straight leg raise to 90 degrees bilaterally with minimal low back pain, no radicular pain or hamstring tightness." He reviewed the MRI results, which showed degenerative disease and facet arthrosis, as well as disc bulges or protrusions at L4-5 and L5-S1, but "no clear-cut nerve root compression." He also noted that, "History and physical findings do not support nerve root compression syndrome." After stating that Mr. Jernigan's injuries arose primarily out of his employment, Dr. Ledbetter referred him to Dr. Jeffrey Hazlewood, a physiatrist.

Mr. Jernigan saw Dr. Hazlewood and described pain in the left low back. Dr. Hazlewood noted "Initially he had one or two episodes of pain just mildly down the right posterior thigh, but this has resolved." He diagnosed mechanical low-back pain. He noted the disc pathologies shown on the MRI but could not say whether "the central protrusions actually occurred with this injury and are not part of a degenerative spine disease. More importantly, they do not seem to be symptomatic."

Dr. Hazlewood saw Mr. Jernigan several times over the next few weeks, performing injections, nerve blocks, and a rhizotomy. He noted in several of those visits that Mr. Jernigan had no radicular symptoms and his straight leg raise test was negative. At the October 24 appointment, Dr. Hazlewood reiterated his diagnosis of chronic mechanical back pain. He elaborated, "I would call this a lumbar strain injury on top of pre-existing degenerative spine disease." Dr. Hazlewood determined that Mr. Jernigan reached maximum medical improvement and assigned an impairment rating.

Mr. Jernigan requested a second opinion, and Bailey authorized an evaluation by Dr. Jeffrey Peterson, which occurred in February 2017. Dr. Peterson assessed lumbago, lumbar degenerative disc disease, and disc extrusion L5-S1. He recommended a neurosurgical evaluation, as well as a new MRI.

Bailey declined to authorize the neurosurgical referral, so Mr. Jernigan returned to Dr. Hazlewood in August 2017 and reported his condition had not improved. He described low-back pain but denied any leg pain or radicular symptoms. Dr. Hazlewood restated his diagnosis of chronic mechanical back pain with no radicular symptoms and normal neurologic examination. He did not feel pain medication management was appropriate and did not believe Mr. Jernigan was a surgical candidate.

Mr. Jernigan filed a Petition for Benefit Determination, and Bailey provided a panel of neurosurgeons from which Mr. Jernigan selected Dr. Michael Moran. He first saw Dr. Moran in April 2018. Dr. Moran noted that Mr. Jernigan had "chronic back and leg pain after a work injury" and ordered a new MRI. Dr. Moran assessed lumbar disc degeneration and displacement, as well as lumbar radiculopathy, and he recommended a

2

decompressive lumbar laminectomy.[1]  Asked about causation, Dr. Moran stated:

> This certainly is a degenerative process in general.  However, the radiologist felt like there is an advancement of the stenosis recently and there is some displacement of the disc.  Essentially he states he was symptom-free until he had his work accident a couple [of] years ago so my opinion would be this was an aggravation of a pre-existing condition and it's therefore a legitimate Workman's Comp. claim.

Bailey's claims adjuster sent Dr. Moran a letter summarizing Mr. Jernigan's medical records and asking the doctor to complete a two-page questionnaire about causation, treatment, and the other doctors' recommendations.  Dr. Moran returned the letter with a post-it note that said, "I am not doing this.  He was mainly treat[ed] by several other MD[s]."

Dr. Moran later saw Mr. Jernigan on August 30 for complaints of increasing right-leg numbness and pain, as well as intermittent bladder leakage.

At Bailey's request, Mr. Jernigan submitted to an Independent Medical Evaluation (IME) with orthopedic surgeon Dr. David West.  Dr. West reviewed Mr. Jernigan's prior medical records and examined him.  He noted a mildly positive straight leg raising test on the left but found "no obvious signs of radiculopathy to the bilateral lower extremities." He concluded Mr. Jernigan had "chronic low back pain with bilateral sciatica, also mechanical back pain with possibly a degenerative lumbar facet disease, which I feel is pre-existing to this injury."  In response to questions about his examination, Dr. West stated that Mr. Jernigan's pre-existing condition of degenerative joint disease is "the more likely cause of his need for ongoing treatment."

Mr. Jernigan requested that the Court order Bailey to authorize the surgery recommended by Dr. Moran.  He relied on Dr. Moran's opinion that he suffered an aggravation of a pre-existing condition, which resulted in his need for surgery.  Mr. Jernigan also requested an award of attorney's fees.

Bailey countered that Mr. Jernigan's need for surgery is not causally related to his work injury.  It contended that the medical opinions of Mr. Jernigan's other doctors are sufficient to rebut the presumption of correctness attached to Dr. Moran's opinion.

### Findings of Fact and Conclusions of Law

Mr. Jernigan need not prove every element of his claim by a preponderance of the

---

[1] Bailey submitted the surgical recommendation to Utilization Review, which recommended approval of the procedure.

evidence in order to obtain relief at an expedited hearing. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). To qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. That is, Mr. Jernigan must come forward with sufficient evidence from which the Court can determine that he would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. Tenn. Code Ann. § 50-6-102(14); *Miller v. Lowe's Home Centers, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Oct. 21, 2015).

To establish causation, Mr. Jernigan relies on the ATP, Dr. Moran, whose opinion is presumed correct. *See* Tenn. Code Ann. § 50-6-102(14)(E). Bailey contends that the other medical proof is sufficient to overcome the presumption. To make this determination, the Court must compare the opinions of the physicians.

> When the medical testimony differs, the trial judge must obviously choose which view to believe. In doing so, he is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

*Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

Applying the first of these factors, the Court notes that the physicians represent several areas of medical specialty. Drs. Ledbetter and West are orthopedic surgeons, Dr. Hazlewood is a physiatrist, and Dr. Moran is a neurosurgeon. Although counsel for both parties argued about the relative qualifications of the doctors, neither party submitted any curriculum vitae or other evidence to support their assertions. In the absence of any information concerning their respective qualifications, the Court cannot find any determinative differences among the doctors.

As to the other factors, the circumstances of the respective examinations are different, in that Mr. Jernigan was an established patient of Drs. Ledbetter, Hazlewood, and Moran, while he only saw Dr. West once. However, the most substantive difference appears to be the amount of information available to the doctors and their evaluation of the importance of that information. That is, Drs. Ledbetter, Hazlewood, and West all reviewed records from Mr. Jernigan's other providers as part of their assessment. Dr. Moran's records, on the other hand, show that he reviewed a prior MRI, but there is no indication he reviewed any other records or office notes regarding previous examinations or treatment by Mr. Jernigan's other doctors.

4

This difference in available information is important in light of Dr. Moran's diagnosis of radiculopathy and his conclusion that Mr. Jernigan "has chronic back and leg pain after a work injury." It is unclear whether Dr. Moran's opinion would change if he were aware that all of the prior physicians noted an absence of radiculopathy. Counsel for the parties indicated that Bailey scheduled Dr. Moran's deposition before the hearing but disagreed on the reason it was cancelled.

The Court notes that Mr. Jernigan appeared sincere in his belief that his work activities caused his current condition. However, contrary to the contention of Mr. Jernigan's counsel, this does not make his claim easy to resolve. The Court must abide by the causation requirements of the Workers' Compensation Law and cannot infer from the mere existence of Mr. Jernigan's condition that it arose primarily out of his employment. While Dr. Moran's opinion is entitled to the presumption of correctness, the Court finds the opinions of three qualified physicians are sufficient to overcome that presumption, at least until Dr. Moran has an opportunity to address the lack of any prior findings of radiculopathy. The Court cannot speculate as to what Dr. Moran might say, so Mr. Jernigan is left without any medical proof that his need for surgery arose primarily out of a work related aggravation of his preexisting condition. Thus, the Court cannot find that Mr. Jernigan is likely to establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, *considering all causes*.

Because Mr. Jernigan failed to establish a likelihood of proving that his need for surgery arose primarily out of his work injury, the Court need not address his request for attorney's fees at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Jernigan's claim against The Bailey Company and its workers' compensation carrier for the requested medical benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on November 27, 2018, at 9:00 a.m. You must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

   **ENTERED this the 3rd day of October, 2018.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:
1. Affidavit of Robert Jernigan
2. Indexed medical records
3. Dr. Moran's August 30, 2018, office note
4. C-42 Form selecting Dr. Ledbetter
5. C-42 Form selecting Dr. Moran
6. Unsigned C-42 Form
7. Medinsights UR report of June 24, 2018
8. Wage Statement
9. Correspondence between counsel for the parties
10. Affidavit of Tim Wyatt
11. Affidavit of Lakota Holder

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Parties' Pre-Hearing Statements
5. Mr. Jernigan's Exhibit and Witness Lists

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 3rd day of October, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| R. Steven Waldron, Employee's Attorney | | | X | arelenesmith@comcast.net |
| Marianna Jablonski, Employer's Attorney | | | X | mjablonski@wimberlylawson.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Filed Date Stamp Here**

## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee


Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**


## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.



[Signature of appellant or attorney for appellant]        _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                      RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month        Medical/Dental  $ _____ per month

    Groceries        $ _____ per month        Telephone     $ _____ per month

    Electricity      $ _____ per month        School Supplies $ _____ per month

    Water          $ _____ per month        Clothing       $ _____ per month

    Gas            $ _____ per month        Child Care    $ _____ per month

    Transportation  $ _____ per month        Child Support  $ _____ per month

    Car            $_____ per month

    Other         $ _____ per month (describe: _____ )

10. Assets:

    Automobile         $ _____        (FMV) _____

    Checking/Savings Acct. $ _____

    House            $ _____        (FMV) _____

    Other            $ _____        Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                                                                    RDA 11082